I want to welcome everyone to the 4th Circuit this morning. We look forward to arguments in these two interesting cases. The first case is Educational Media v. Insley. Ms. Lindberg, pleased to hear from you. Good morning, Your Honors, and may it please the Court. My name is Rebecca Glenberg, and I represent the two college newspapers in this case. This is not a typical commercial speech case. The regulation that's challenged here does not simply target advertisers, sellers and manufacturers of alcohol, and regulate how and where they can market their wares. The regulation also singles out a particular segment of the media, college student newspapers, for special burdens. Specifically, it restricts college student newspapers' ability to determine their own content and their ability to generate revenue. And accordingly, the plaintiffs here are not merchants or manufacturers, but members of the press who seek to control their own content and compete on a level playing field with other local newspapers. This is what distinguishes this case from any of the other commercial speech cases that this Court has heard that have applied Central Hudson, and indeed any of the commercial speech cases in the Supreme Court that have applied Central Hudson. And that's why strict scrutiny applies in this case. As then-Judge Alito recognized in Pitt News v. Papert in the 3rd Circuit, strict scrutiny applies when the government singles out a narrow segment of the media for special financial burdens. That presumption against regulations that burden a small group of speakers applies regardless of whether the state has a censorial motive, because regardless of the government's motive, such burdens run the risk of distorting the marketplace of ideas. And that risk is particularly keen in a case like this, where the segment of the media that is singled out, college student newspapers, has such a unique function within the press generally. That is, as the amicus brief of the Student Press Law Center demonstrates, student newspapers are in a unique position to report on issues of interest to the campus community. They are in a particularly unique position to expose wrongdoing. If in fact there are going to be allowed restrictions on absolute First Amendment free speech, free press, wouldn't it be to an audience that is more of a protected audience, an underage audience? I'm not sure I understand the question, Your Honor. I'm saying if there are going to be restrictions on free speech which are allowed, wouldn't that be more likely allowed when the targeted audience is a protected audience, an underage audience? Well, Your Honor, I think that... Do you think that's true, yes or no? I do not think that's true when the word underage is used to refer to people over the age of 18. Courts have shown special solicitation to... But I didn't ask you that. We can argue that question later as to what is an underage audience. But I just asked, to an audience that we would all agree is underage, don't you think restrictions there are likely more justified than when the audience is not in that protected group? As a general matter, when the audience are underage in the sense that they are particularly susceptible to certain kinds of speech and... So you would say yes as sort of a general rule maybe. You obviously don't think that would apply to this target audience. Just as a general rule, do you think that is correct? Yes, but I say so even as a general rule, I say so cautiously because even in those cases where speech is directed towards underage people, such as in the video game case in the Supreme Court... In your analysis, does it matter that if, as a general rule, the target audience is a protected group, and I'm just using that term generically, is a protected group and the speech that is affected is commercial speech. Does that factor at all into your analysis? Commercial speech restricted in a way to protect a particularly susceptible audience. Does that factor into your analysis? I think those factors may come into play when determining the outcome of the strict scrutiny analysis. Would they matter in strict scrutiny then? In determining whether strict scrutiny applies here? No, in determining whether it passes strict scrutiny. I think those are factors that can be considered by the court, but... Do you lose? Well, I think that this court has already said that we lose in terms of our facial challenge if strict scrutiny does not apply. We lose under central Hudson. That's been resolved, right? What's left before the court is a facial challenge with respect to the strict scrutiny theory, the narrow segment of the media theory, and an as-applied challenge as to both that theory and the central Hudson theory. In other words, in the previous case, this court only decided whether the statute was facially unconstitutional under central Hudson and not under the strict scrutiny theory or as applied under either theory. Does that answer the question, Judge King? Well, I think if we deal with the as-applied theory, you still say that strict scrutiny applies there? Yes. Our argument in the as-applied challenge is that either... Are you trying to win the case or are you just trying to make some law? I'm trying to do both, Your Honor. Ultimately, I'd prefer to win the case. I would think that's what you're supposed to be doing. But if we deal with the as-applied theory and analyze under central Hudson, would you call that strict scrutiny? No. Central Hudson is a form of intermediate scrutiny, the courts have said. So, as applied, our contention is that the statute passes neither strict scrutiny nor intermediate scrutiny because these particular newspapers have audiences that the majority of whom are... So you say you can win under intermediate scrutiny? As to the as-applied... As to the as-applied challenge? Yes, Your Honor. And if you did that, would we have to deal with this other facial challenge point that you bring up? No, you would not, Your Honor. If you ruled that the statute was unconstitutional as applied to these plaintiffs under central Hudson, you would not have to reach the strict scrutiny theory. Under central Hudson, Justice Powell laid out four factors, right? And you all, I think, both sides agree that the first two are satisfied? Correct, Your Honor. And you... There are some issues about the third and fourth? That's right, Your Honor. Are there any issues about the third? The issue... there are... with respect to the as-applied challenge under central Hudson, the third and the fourth prongs, we would argue, are not satisfied because this is a... But you only have to satisfy... you'd only have to show that one of them's not satisfied. That's true, Your Honor, yes. Which one's your best argument? Well, I think that they're equally good, Your Honor. I mean, the... You think they're equally good? I do, as to the third and fourth prongs. Well, I thought the... I'm sorry. No, go ahead. I thought that the earlier case disposed of the third one. As to the facial challenge. Right now. That the earlier case controls the third one. And we don't have any authority to overrule a prior panel. That's the... besides that, it's law of the cage. Every way you look at it. I don't see how we could disturb the ruling on the third prong. Well, again, the third prong... The court was applying the third prong to a facial challenge and asking whether, on its face, the statute directly and materially, and not whether, as to these plaintiffs, the statute directly and materially advances a substantial government interest. So I don't think that you would be overruling the prior panel if you found that, as to these plaintiffs, either the third prong or the fourth prong or both were not satisfied. Can we focus on the fourth prong and you tell us your best argument with regard to the fourth prong? With regard to the fourth prong, the argument is that, as applied to these newspapers, for whom over half of the audience is over the age of 21, there are better ways to diminish underage and abusive drinking than by restricting speech. And those include a higher tax on alcoholic beverages and counter-advertising, that is, advertising in newspapers that explains why students should not overindulge in alcohol. And these are remedies that have been proven effective to fight underage drinking. Hasn't the state had a multifaceted approach to the problem of underage drinking?  They have, Your Honor. To show a theory, they have to do everything that can possibly be thought of before the state can act? Well, that's certainly true under strict scrutiny, Your Honor. They have to do everything anybody could think of before they say no advertisement in the school newspaper? Everything, if there are, under strict scrutiny... Just ask, everything anybody can think of, is that the standard? Under strict scrutiny, yes, Your Honor. You think under strict scrutiny, the state would have to do everything anybody could dream up before they could regulate speech in any way to an underage audience? Under strict scrutiny, if there are methods that are non-speech restrictive that are proven effective... What about hiring a policeman to hold the hand of every under-21-year-old person at UVA? Which, by the way, may be a good idea, but I don't believe that for my law clerks from UVA. That's why I thought I would add that. But at any rate, so I just dreamed that up. They have to do that first? Hire a policeman to walk arm-in-arm with every person under 21 as an alternative? That's what you think the law is? Well, I think that in that case, the state would be able to prove that that's not a feasible alternative. Certainly, yes, we're limited to alternatives that are actually feasible. What about putting more policemen on campus then, short of one-on-one, just have more policemen? You think that's an alternative that the state would have to do before they could restrict advertisement to underage students? Well, certainly in Pitt News, that was one of the alternatives that was... So in other words, to have more free speech, we have to move more toward a police state? Well, Your Honor, again, I think that the question is whether there are proven effective alternatives that do not infringe on free speech and that are feasible for the state to introduce. The state has a compelling interest here. I know you've been asked to focus on other things, but do you think there is? Does the state have a compelling interest in... The question is whether or not they've effectively addressed it. But if the compelling state interest... Is there one in this case, do you think? I think that there is a compelling state interest in preventing the underage use of alcohol. I think that that... And by underage, you mean 18 or 21? 18 to 20, yes. Under 21? Under 21. So you use under 21 as your underage? Right. Okay. But when it comes to restricting the use of alcohol by adults who are of age, who have been determined by the state to be capable of drinking, I think that the interest is less than compelling. And the Supreme Court... Does your argument change based on the admissions in graduate school and the retention of students at UVA, in other words, if the mix changes from predominantly under 21 one year to predominantly over 21 the next year, does your analysis change? Well, I think that then the as-applied analysis changes because then we're not necessarily dealing with newspapers that are being read primarily by... So if you were to win the case, then you would want an order saying you win for one year so the numbers could be reexamined the next year? Well, again, I think this is only an issue as to the as-applied. Right, as-applied. Then I think that the order would say that the statute is unconstitutional as applied to... The school year 2013, 2014 or something like that? As applied to newspapers whose readers are primarily over 21 and ABC... But in as-applied, that would be determined by the facts of the case, wouldn't it? Yes, and I think that ABC would then have the opportunity to demonstrate that those newspapers were no longer being directed primarily to students over 21. What would you do with the language intended to be distributed primarily to persons under 21 years of age? What would you do with that language? Not that were distributed, but which were intended to be distributed. What would you do with that language in the statute? Well, I think that the solution is that the entire statute is unconstitutional as applied if the newspapers actually do reach primarily... Where did the statute come from? Actually, I'm sorry, it's a regulation. Did I say statute? You said statute. I said that. It's just a language. I'm under the impression there was no statute. You're correct, Your Honor. It's a regulation. Does that make a difference? I know you're riding lights on, but we've got questions. We'd like to use a chance to answer. And I want to ask the other side this, too. So is there a difference between a duly enacted statute by the representatives of the people here, the House of Urgencies or General Assembly, whatever you call it here in Virginia now, and, which we don't have, and a regulation written up by a bunch of bureaucrats in the Alcohol and Beverage Control Commission? How does one or the other of those impact on these tests that you're talking about? Here we have a regulation. We don't have a statute. Right. The regulation is not enacted. It was promulgated by the executive branch of government. Right. I think that where that comes into play is, again, the question of whether there is a state interest in regulating speech to adults that have been determined by the General Assembly to be lawful consumers of alcohol. And to the extent that the ABC asserts an interest in controlling alcohol use by people who the General Assembly have been determined to be capable of using alcohol, that's where that comes into play. That doesn't answer the question, I don't think. What if this regulation, you have to just hypothetically assume this, what if this regulation impacted colleges and the colleges impacted had 90% of their students under the age of 21? Then your answer wouldn't really make any sense to his question. His question is, you answered it because you don't think it really applies. His question was, did it make a difference that it's a regulation versus some enactment by the General Assembly here in the state of Virginia? And your answer is? Well, the answer is it doesn't matter as to the level of scrutiny that applies, but what I was trying to say was that to the extent that they're claiming a state interest in regulating the alcohol consumption behavior of those over the age of 21, that interest is contradicted by what the General Assembly has done with respect to regulation of alcohol. If there are no more questions, I'll reserve the rest of my time. Thank you. Thank you. Ms. Hill. May it please the court, I'm Catherine Hill. I'm here on behalf of the Appalese, and joining me at council table today is Deputy Attorney General Wes Russell. Appellant's arguments ignore the law of the case and the mandate rule, which compelled the district's court's compliance on remand with this court's opinion in which forecloses re-litigation of issues already decided by this court. Do you think that the law of the case and the mandate rule dispose of every issue here? Yes, sir, I think it disposes of every issue except the alternative argument. There's no room for anything, regardless of which, whether it's the facial challenge or as-applied challenge or strict scrutiny or intermediate scrutiny, whatever. There's no room for it. The first opinion took care of it. That's right. It's too late to argue for strict scrutiny now, and in fact, this court already decided  Well, is it too late to argue intermediate scrutiny now? That's the law of the case. Why is it too late to argue intermediate scrutiny in an as-applied analysis? Because the court already decided that the regulation should be evaluated under Central Hudson's intermediate scrutiny framework. The opinion said we're not dealing with an as-applied challenge. That's correct. We're dealing with a facial challenge. But on remand, the district court is constrained by this court's prior opinion and was actually mandated to decide the as-applied challenge in light of this court's opinion. And the district court did. That's correct. And that was the appeal. That's correct. So the district court dealt with what went back to it, and now it's back up here. So I'm at large, I understand how you say that the law of the case or the mandate rule takes care of it. Well, there's no room to re-argue application of strict scrutiny because the court has already decided that intermediate scrutiny applies. I said, get away from strict scrutiny. She said, what about intermediate scrutiny on the as-applied challenge? I believe that's what she said. I don't want to put words in her mouth. Right. And this court already decided that the Commonwealth has a substantial governmental interest in preventing and reducing underage and abusive drinking, that the regulation advances that substantial interest, and that it's narrowly tailored to advance that interest. And despite the district court's invitation to do so, the plaintiffs did not amend their complaint or any pleadings, and they did not produce additional evidence. The record before you is identical as the first appeal. Do you think the test before us is identical? I do. Let me say the circumstances. As applied versus facial, you think the challenge, you think that is foreclosed by the first opinion, an as-applied challenge? Well, it is an unusual position to be in, but in fact, the same four-part test applies, the same level of intermediate scrutiny applies, and the facts, the record, are identical. I know that, but can't you read? I'm just asking now. Can't you have facts in the record, which may not be necessary at all for a facial challenge, and have the facial challenge disposed of, and then look at the same record without supplement? There was no supplement of the record in this case, as I understand the record. But you could then have an as-applied challenge, during which challenge you look to the specific facts in the record. Isn't that possible? In theory, perhaps possible. Under this record, in this case, it is not. The appellant's alternative argument is that the regulation unfairly discriminates against a narrow segment of the media, and they rely upon discriminatory tax cases, which of course concerned the content of the publications and the communications. The courts there were concerned with the suppression of particular opinions, the actual content of the articles to be published. There's no such concern here. There's no facts here that the actual content of the articles to be published by these newspapers is impacted at all by the regulation. They also ignore the special characteristics of college student publications. That the first case didn't decide the fourth prong on the as-applied challenge of the intermediate scrutiny, because it specifically says it doesn't. My read of the opinion is that it specifically says that it is narrowly tailored to serve the government. We're dealing with a facial challenge only. Correct. It did say that. So it didn't deal with an as-applied challenge. Correct. But all four factors were determined. Do you think you win only under the law of the case? Is that the only way you win this case, at this point, is law of the case? I'm just asking. In the mandate rule, you threw that in. If I understand... If there's any difference. We absolutely win under the law of the case and the mandate doctrine. So you're willing to stop right there? If you're... You're willing to rest your case? It's all we need. It's been decided. Are you saying you're willing to rest it right there? You plan to figure right on that point? Yes. Well, that may be, but you didn't answer my question. You turned to my question. I said, do you only win under the law of the case? And Judge King added mandate. I'm glad to have that in my question. You said we win under that. That wasn't my question. My question was, is that the only... It's not a difficult question. Is the only way you win this case under the law of the case doctrine, the mandate? If we get into the analysis of what's before us, which may be before us for an as-applied challenge, you think you lose? No, sir. Well, then, let's shift to that argument, maybe. Okay. If we go back through the central Hudson analysis... Let's go to four, prong number four. ...whether or not the regulation is narrowly tailored. Right. Yes, and it absolutely is under the record before you. It applies to all college student publications. That doesn't mean it's narrowly tailored. But it doesn't... It doesn't look like it's broadly tailored. Well, and, of course, appellants would argue that it's both too narrow and overbroad. But, in fact, it is tailored to limit the promotion of alcohol to the underage college student population and a college student population, regardless of its age, that is prone to abusive drinking. It doesn't foreclose other means for adults, meaning those over the age of 21, to see ads elsewhere. And certainly... When you look at narrowly tailored, are you looking at narrowly tailored audience or are you looking at narrowly tailored action in light of alternatives? Which are you talking about? The latter. Okay. I haven't heard that yet. Okay. You just talked about the audience or the act prescribed being narrowly tailored. But don't we look at, as applied challenge, wouldn't we look at alternatives to the regulation? I think that is part of it, Your Honor. And the Commonwealth, of course, has utilized all of the alternatives that have been suggested in other cases, such as prevention, enforcement efforts on campus, ABC in cooperation with the colleges and universities, with local law enforcement, state law enforcement. They provide grants for prevention and law enforcement. Do you think it's narrowly tailored in light of an alternative which could be the proposal to edit the content of articles in the paper? In other words, I suppose, if we're talking about it, some bureaucrat somewhere could say, not only can you not have advertising, you can't have articles that show students holding beer in their hands. You can't have any article that mentions students are having parties and drinking alcohol. Do you see what I mean? Is that an alternative? That would be more restrictive, wouldn't it? It would. And, of course, that would go beyond commercial speech into the actual... But I'm saying, but you would still analyze the regulation in terms of were there alternatives. It's not an alternative. And when we look at what the state did, don't we look at what else the states could have done more and less? I mean, the state could have passed a regulation saying you aren't to mention the word alcohol in any type newspaper. It would still be subject to the same analysis that we have here, wouldn't it? That's right. And then we would likely say, my gosh, there's got to be something less than saying you can't use the word alcohol in the newspaper. Maybe you could just strike commercial speech. That might be less restrictive, isn't that right? Well, and as the district court and this court before examined the record and determined that the Commonwealth has utilized other means, and as Your Honor pointed out, utilizes a comprehensive scheme to address the problem. What do we do with that intended-to-be-distributed language in the regulation? First of all, do you think the fact that this is a regulation and not a statute, does that affect the analysis in any way, in your opinion? I'm not sure it does, because the Commonwealth, through the legislature, has delegated the authority to regulate alcohol through... They've delegated it, but let's be like you... that the legislature would be entitled to work deference, if that's the right term, in something like this than just amongst the bureaucrats. I would argue that ABC... Well, that's what they are. They're part of the executive branch. The legislature didn't adopt this regulation, right? It was promulgated, presumably duly promulgated, by the ABC board, whatever it's called, Alcohol Beverage Control Board. But I always thought that legislative acts were entitled to maybe a little more credence or deference than mere regulations, although regulations are entitled to be considered the law, I guess. But of course... But they're not legislative acts. Legislative acts, people's representatives are going through them, and there's usually a legislative history and studies done and all that kind of stuff. This regulation has been on the books in substantially the same form for many, many decades, and it's presumed that... Are these kids out here at Virginia Tech drinking less beer than they used to drink before you adopted it? I don't know that it's possible to isolate the effectiveness of one particular element of the Commonwealth's comprehensive scheme. How about up at UVA? Are they drinking less beer up there? Did y'all prove they were? Was there support for that somewhere in this record? Again, my... That they're drinking less as a result of this regulation? There is no evidence in the record of that, Your Honor. Was there evidence to the contrary, promulgated or introduced by the other side? No, I would say no. I thought they had an expert that said these things weren't effective. It says there's very little empirical evidence that alcohol advertising has any effect on alcohol consumption. That's at the record at JA 310, the deposition of an expert. And, of course, that's completely contrary to this Court's opinion and other opinions which acknowledge the direct correlation between advertising and consumption, and that doesn't change, regardless of the age of the reader. If advertising doesn't help in consumption of alcohol, then I suspect every shareholder in America ought to be rushing to a court to file a suit against the Board of Directors of every beer manufacturer because they're spending billions of dollars a year to advertise, and if it doesn't have any effect, they are throwing away billions of dollars. So I know what the expert says, but you know, somewhere probably an expert says the sun doesn't come up in the morning. We don't have to accept that either. But they ship brands around. The people they advertise get their brand identification out there. They want them to drink Bud Light rather than Coors Light or Weller Light. Isn't that right? That's, of course, appellants, one of appellants' arguments. Whose expert was... Whose view do we take of the evidence at this stage? Or the fact? Well, they get the benefit. They get the benefit of the fact. But they're stuck with the record which is identical as before. Whose expert was safer, S-A-F-F-E-R? Ours. And that is the expert that said there's very little empirical evidence that alcohol advertising has any effect on alcohol consumption. That's correct. So then do you think it's a firm basis for a ruling from this court to say this is not an effective regulation because advertising doesn't really matter? You think that we're somehow bound by an expert saying advertising doesn't matter? No. In this whole case about people trying to get advertising in a paper, for some reason... Absolutely. You think those people just want to throw away $30,000? No, they don't. They spend billions of dollars. They want them to drink their beer. That's right. They absolutely want them to drink their beer. But that doesn't necessarily mean they're drinking more beer. Because it may be... They want to get the market... Miller wants to get the market from Bud. That's certainly contrary to the Commonwealth's governmental interest of preventing or reducing... Contrary to what your expert witness said, too. And binge drinking as well. To promote. Which is a laudable goal, for sure. And it is a substantial problem. Is the theory that people only want to shift brands because those students are at full capacity for alcohol consumption? I don't know if we accept that either. Maybe somewhere at UVA or Virginia Tech there's a student who could drink another swallow of beer. Maybe there is. Maybe there is. Is Virginia Tech the biggest school? Pardon me? Is Virginia Tech the biggest university or biggest college in Virginia? Is that the largest one? I don't know that it is anymore, Your Honor. Which would be? Is something bigger than it? I'm not sure. Virginia's not. University of Virginia's not as big as Virginia Tech. No, certainly not. Certainly not. I'm not sure about VCU. I'm not sure. What do you make of this regulation, back to this, the language, intended to be distributed? What do you make of that language? The other side makes some comment about what the actual age mix is. I guess that's their argument at this point in time. What do you make of that? It says, which is distributed primarily to persons under 21 years of age are intended to be distributed primarily. What do you make of the intended to language? I'm just asking. I distinguish it from college student publications are distinguished from graduate student publications, faculty publications. There are lots of other publications. That's not my point. I make a distinction between distributed primarily to persons under 21 and intended to be distributed. What difference do we make of that distinction? Is that a question of proof and what issue you have to prove? Do you understand my question? I'm not sure I'm following. Well, it seems to me that the number of where actually where the audience, the age makeup of the audience, in other words, are there more people, let's just say, at Charlottesville above 21 or below 21? That seems to me that would deal with the question of how that publication is distributed. But does that deal with the question of how it's intended to be distributed? No, no. And, in fact, the numbers are a bit of a moving target, which I think explains the intended to be distributed. You think that's what it does? I do. Has that language been in there all along, during the life of the regulation? I'm not sure I can say definitively, Your Honor. I want you to explain, because I think maybe I cut you off. Go to step four again. Okay. And tell me, because I understand that if we were to say it's strict scrutiny, we were to say, you think there is a compelling interest? You think there is a compelling state interest? Yes, sir. And that is? To prevent or reduce underage and abusive drinking among college students. And basically it's a federal policy that 21 is the appropriate age to drink under the highway bill. They forced every state basically, federal governments basically forced every state to adopt that drinking age. Yes, sir. Now, what about step four? Talk about the, in a general context of if you're going to limit First Amendment activity, you have to look at if they're more narrowly tailored or least restrictive alternatives or less restrictive alternatives. How do we assess that in this case under these facts? Right. And certainly it's not a perfect fit, because of course there are those over the age of 21 at our colleges and universities. It's not a perfect fit. It's not a perfect fit. It needs to be a reasonable fit? Yes, sir. Is that the terminology? Yes, sir. And in fact, it's not a blanket ban that the courts tend to strike down under strict scrutiny, because it doesn't foreclose adult readers from viewing these ads elsewhere. It's narrowly tailored to achieve the government's interest in preventing. Well, how do you deal with that fact? It seems to me in some analysis the fact that there are beer advertisements everywhere, it seems to be both a benefit and a hindrance to your argument. The benefit is, as you say, kids can still, to the extent they need that information, they can get it. But on the flip side is it's everywhere anyway, so why take this step to cut it out of a student newspaper when that really does almost nothing to limit kids, and I'm talking about under 21, students knowing about alcohol? Do you see what I mean? I do. It cuts both ways. Well, but for several reasons, and one, because it limits the promotion of alcohol consumption among the college student population, and that includes a significant number of underage students, underage readers, and those with a known tendency to overconsume and binge drink, and it limits that promotion with institutionally affiliated newspapers. So it would send a very confusing message at best to permit such alcohol advertisements to this population. So you say that it's reasonable, entirely reasonable, I'm asking this as your position, for a state that has a position by the state general assembly that you can't drink under 21, to then say where mostly 21 people congregate, that's our intent, we don't want them to get beer advertisements. Do you think that's completely reasonable in light of the objective? Because the state of Virginia has made the drinking age 21, haven't they? Yes. Is that your position on why it's reasonable? That's one of them, yes, sir. Okay. I see my time's up. If there are no more questions, I would ask that the district court's judgment be affirmed. Thank you. Thank you, Ms. Hill. Ms. Glenberg? I first want to point out that in footnote 2 of this court's prior opinion in this case, the court expressly reserved both the argument that as applied, the regulation unconstitutionally restricts commercial speech under Central Hudson and that on its face and as applied, it unconstitutionally discriminates against a particular segment of the media. So both of those arguments are still before the court and are right for decision right now. I want to return to the reasons why strict scrutiny applies in this case, if I may. The Pitt News case very persuasively, in my opinion, relied on the cases in which the Supreme Court has said that special financial burdens against a narrow segment of the media are presumptively unconstitutional. Now, contrary to what Ms. Hill has said, those cases did not rely on there being a content-based distinction. It was any case, any regulation that affected just a narrow segment of the media, whether that was based on content or whether it was based on the size of the newspaper or any other factor. If it affected a narrow segment of the media, there was a risk of distortion of the marketplace and therefore it was presumptively unconstitutional. If, in fact, just accept this, that the audience is under 21 years old, can the state do anything to regulate what the newspaper does? Anything? If the audience is under 21 years old, I think that that factors into the strict scrutiny analysis. I didn't ask you all that. I said, is there anything in your assessment of the law and the application of the law, is there anything the state could do to regulate what's published? Anything at all? I think that if the audience is entirely or almost entirely under the age of 21, the General Assembly may be able to do that. Could the ABC board do it? And the ABC board can probably do it. I think that the argument is more compelling if the audience is under 18 because, again... You don't think there's any difference between the General Assembly doing it and the ABC board doing it? For our purposes here? I think probably not, Your Honor. Except, again, as I indicated, that the General Assembly has indicated that it does not have an interest in prohibiting people over the age of 21 from consuming alcohol, and so to the extent that that is a claimed state interest, it makes a difference. What could the state do? How could it, by state regulation, in your opinion, limit anything the publication does against an under-21 audience? You said it may be able to. I'm trying to figure your argument. What could the state do? How could the state regulate, in your opinion, you may be right, but in your opinion, assessment of the law, what could the state do to regulate a newspaper that is intended primarily for that under-age 21 audience? They could do what? They could say you cannot publish what? I think that, again, if we were talking about a audience that was entirely under the age of 21, probably under at least Central Hudson, they could prohibit alcohol advertising. You're talking about intermediate scrutiny. Yes, Your Honor. So you think it turns on what we decide the audience is primarily in this case? If it's primarily under 21, then they could limit alcohol advertisement, which is what they did in this case. So you think this case turns on the fact of what the age of the audience is at these schools at this moment? I don't think it's... I think that it's... That's not quite accurate, Your Honor. I think that it's... Well, that's what you just said. Well, I think that the distinction is between an audience that is entirely or nearly entirely under 21 versus one with a substantial proportion, whether it's more or less than... Then you think it turns on the age of the audience and the facts of the case as it stands from year to year? Isn't that the distinction you're drawing? I think that... That distinction can be made by the state. I think that if they are... If you are dealing with a... I don't understand your argument. You think that if, in fact, the audience being targeted is primarily under 21. Now, the degree of primarily, you want it to be more clearly and largely under 21. But to you, the distinction is if it is an under-21 age group to the appropriate level of mix in the audience, the state could, in fact, do exactly what they're trying to do in this case, limit advertising. You think that? I think that if it's such a... If it's such a great degree under 21 that the state is not substantially limiting advertising to adults, then they can do it. Where there's a significant cohort of adults who are of drinking age whose access to information is being limited, then... But I just want to be clear on saying this. You think, then, the critical question is how we determine the age of the intended audience. Because you said the age makes the difference. I think, again, that it makes a difference only if we're talking about an overwhelming number of the audience being under 21. Overwhelming would be more than 50%. Well over 50%. Well over 50%. 90%, 95%. 95%. Now, if we don't buy into your strict scrutiny argument, do you lose? Well, no. Then we have the as-applied argument under Central Hudson. They have the as-applied argument under Central Hudson. You'd, then, have to say it's not a reasonable fit. That's right, Your Honor. Again, it would have to do with the age of the audience where it's not a reasonable fit to control underage drinking by controlling advertising to a majority adult audience. I think we've probably given you enough time here. Yes, I apologize for going over time. Thank you very much. No, we've been asking questions. We pushed you over time.
judges: Robert B. King, Dennis W. Shedd, Stephanie D. Thacker